ORIGINAL

Approved: _____
KEDAR S. BHATIA
Assistant United States Attorney

Before:   THE HONORABLE JAMES L. COTT
          United States Magistrate Judge
          Southern District of New York

19 MAG 8614

------------------------------------ X

UNITED STATES OF AMERICA            :   SEALED COMPLAINT

     - v. -                         :   Violations of
                                        18 U.S.C.
ALSENY KEITA, and                   :   §§ 1344, 1349, and 2
SEKHOU TOURE,
                                    :   COUNTY OF OFFENSE:
               Defendants.              NEW YORK
                                    :

------------------------------------ X

SOUTHERN DISTRICT OF NEW YORK, ss.:

    WAI YU, being duly sworn, deposes and says that he is a Special Investigator with the New York City Department of Investigation and charges as follows:

COUNT ONE
(Conspiracy to Commit Bank Fraud)

    1.   From at least in or about 2015, up to and including at least in or about 2019, in the Southern District of New York and elsewhere, ALSENY KEITA and SEKHOU TOURE, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit bank fraud, in violation of Title 18, United States Code, Section 1344.

    2.   It was a part and object of the conspiracy that ALSENY KEITA and SEKHOU TOURE, the defendants, and others known and unknown, willfully and knowingly, would and did execute and attempt to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses,

representations, and promises, in violation of Title 18, United States Code, Section 1344.

(Title 18, United States Code, Sections 1349 and 2.)

<u>COUNT TWO</u>
(Bank Fraud)

3. From at least in or about 2015, up to and including at least in or about 2019, in the Southern District of New York and elsewhere, ALSENY KEITA and SEKHOU TOURE, the defendants, willfully and knowingly, did execute and attempt to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, KEITA and TOURE fraudulently deposited checks issued to other individuals into bank accounts they controlled, without being authorized to deposit the checks, and then withdrew funds from those accounts.

(Title 18, United States Code, Sections 1344 and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4. I am a Special Investigator with the New York City Department of Investigation ("DOI") and have been with the DOI for approximately 2.5 years. Through my conversations, I have become familiar with various public assistance programs that are administered by New York City. Through my training and experience, I have become familiar with bank fraud and check fraud schemes involving false identities.

5. I have participated in the investigation of this matter, and I am familiar with the information contained in this affidavit based on my own personal participation in the investigation, my review of documents, and conversations that I have had with other law enforcement officers and other individuals. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents, and the actions and statements of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

2

6. Based on my conversations with employees of the New York City Human Resources Administration ("HRA") and my review of publically available information, I have learned the following:

    a. The HRA is an agency of the City of New York responsible for administering certain of the City's public assistance programs. Among other things, HRA provides rental assistance to individuals and families with social service and economic needs.

    b. For individuals who qualify, HRA provides rental assistance by sending monthly rent supplement checks to landlords to cover a portion of the cost of documented expenses such as rent or storage costs ("HRA Supplement Checks"). HRA disburses monthly rent supplements by issuing checks directly to landlords via mail. The checks are addressed and made payable to the landlords.

7. Based on my conversations with other law enforcement officers and my review of bank records, I have learned that, since at least in or about 2015, a number of HRA Supplement Checks have not been received by the intended landlords but have nevertheless been deposited into bank accounts.

8. Based on my review of bank records, including bank surveillance photographs, I have learned that individuals matching the appearances of ALSENY KEITA and SEKHOU TOURE, the defendants, based on photographs contained in law enforcement, social media, and New York State records, deposited HRA Supplement Checks addressed to various payees into bank accounts KEITA and TOURE controlled, and then withdrew money from those accounts.

### The "Sekhou Toure" Accounts

9. Based on my review of bank records, including bank surveillance photographs, I have learned the following:

    a. Between on or about June 29, 2018, and August 17, 2018, approximately 37 HRA Supplement Checks totaling approximately $26,655.44 were deposited into a bank account belonging to "Sekhou Toure" at a national bank whose accounts are insured by the Federal Deposit Insurance Corporation ("Bank-1"). The payees on the checks were not ALSENY KEITA or SEKHOU TOURE, the defendants.

3

b. On or about July 30, 2018; August 19, 2018; August 20, 2018; and August 22, 2018, in six different transactions, the same individual matching the appearance of TOURE, based on law enforcement records, social media records, and records from the New York State Department of Motor Vehicles ("DMV"), withdrew a total of $2,450.00 from the "Sekhou Toure" account at Bank-1 using automated teller machines ("ATMs") in the Bronx, New York:

| Date | Amount of Withdrawal | Approximate Location of ATM Used for Withdrawal |
|---|---|---|
| July 30, 2018 | $400.00 | 149th Street, Bronx, New York |
| August 19, 2018 | $200.00 | East Fordham Road, Bronx, New York |
| August 20, 2018 | $800.00 | 149th Street, Bronx, New York |
| August 20, 2018 | $200.00 | 149th Street, Bronx, New York |
| August 22, 2018 | $50.00 | 149th Street, Bronx, New York |
| August 22, 2018 | $800.00 | 149th Street, Bronx, New York |

c. Bank surveillance photographs show at least two other individuals, other than TOURE, depositing HRA Supplement Checks and withdrawing funds from the "Sekhou Toure" account at Bank-1.

d. Between on or about May 1, 2018, and on or about May 31, 2018, twenty HRA Supplement Checks were deposited into a bank account belonging to "Sekhou Toure" at a national bank whose accounts are insured by the Federal Deposit Insurance Corporation ("Bank-2"). The payees on the checks were not KEITA or TOURE.

e. Between on or about May 1, 2018, and on or about May 31, 2018, there were a number withdrawals from the "Sekhou Toure" account at Bank-2 and there were a number of expenses paid using funds in that account.

f. The account opening documents for the "Sekhou Toure" accounts at Bank-1 and Bank-2 list a date of birth and social security number that match the date of birth and social security number for TOURE in law enforcement records. The account opening documents for both accounts also list a particular email address ("Email Address-1"). The account opening documents for the "Sekhou Toure" account at Bank-1 list a telephone number ending in 5311 (the "5311 Number"). The account opening documents for "Sekhou Toure" at Bank-2 list a

driver license number for a New York State driver license (the "Toure License Number").

10. Based on my review of records from Facebook, Inc. ("Facebook"), I have learned that:

    a. On or about June 27, 2015, a Facebook account was created for user "sekhou.toure.37." When the account was opened, the user provided Email Address-1 and the 5311 Number. Facebook records show that the telephone number provided was "verified" on or about August 24, 2015.

    b. An individual frequently depicted in photographs on the "sekhou.toure.37" Facebook account matches the appearance of SEKHOU TOURE, the defendant, in bank surveillance photographs, as described above.

11. Based on my training and experience, I have learned that a "verified" telephone number is one that a service provider has confirmed is active and is controlled by the user enrolling with the service provider. Facebook records state that a "verified" telephone number "indicates the account holder responded to a text sent to the listed phone number."

12. Based on my review of records from the DMV, I have learned that the Toure License Number is the driver license number for "Sekhou Toure" in DMV records. Furthermore, the individual depicted in DMV records as "Sekhou Toure" matches the appearance of SEKHOU TOURE, the defendant, in bank surveillance photographs depositing HRA Supplement Checks, as described above.

### The "Okoli Soumah" Account

13. Based on my review of bank records, including bank surveillance photographs, I have learned the following:

    a. Between on or about January 29, 2018 and on or about June 5, 2018, 115 HRA Supplement Checks were deposited into a bank account belonging to an individual named "Okoli Soumah" at Bank-2. The payees on the checks were not "Okoli Soumah," or ALSENY KEITA or SEKHOU TOURE, the defendants.

    b. On or about June 7, 2018, an individual matching the appearance of KEITA deposited HRA Check No. 44597781, worth $528.00, into the "Okoli Soumah" account. The payee on the check was not "Okoli Soumah," KEITA or TOURE. On or

5

about June 8, 2018, an individual matching the appearance of KEITA withdrew $760.00 from the "Okoli Soumah" account.

  c. On or about June 13, 2018, an individual matching the appearance of KEITA deposited HRA Check No. 41459270, worth $526.00, into the "Okoli Soumah" account. The payee on the check was not "Okoli Soumah," KEITA or TOURE. On or about the same day, an individual matching the appearance of KEITA withdrew $760.00 from the "Okoli Soumah" account.

  d. Each of the four transactions described above took place at the same ATM in Manhattan.

  e. Bank surveillance photographs show at least one other individual, other than KEITA, depositing HRA Supplement Checks and withdrawing funds from the "Okoli Soumah" account.

### The "Alexander Egber" Account

  14. Based on my review of bank records, including bank surveillance photographs, I have learned the following:

  a. Between on or about December 19, 2017, and May 25, 2018, 111 HRA Supplement Checks worth a total of $67,351.40 were deposited in a bank account belonging to an individual named "Alexander Egber" at Bank-2.

  b. On or about May 28, 2018, an individual matching the appearance of ALSENY KEITA, the defendant, deposited HRA Check No. 41869615, worth $505.00, into the "Alexander Egber" account. On or about June 5, 2018, an individual matching the appearance of KEITA deposited HRA Check No. 44639212, worth $750.00, into the "Alexander Egber" account. The payees on the checks were not "Alexander Egber," KEITA, or SEKHOU TOURE, the defendant.

  c. On or about June 5, 2018, an individual matching the appearance of KEITA withdrew $760.00 from the "Alexander Egber" account.

  d. On or about June 13, 2018, an individual matching the appearance of KEITA withdrew $760.00 from the "Alexander Egber" account.

  e. Each of the four transactions described above took place at an ATM in Manhattan; and

6

f. Bank surveillance photographs show at least one other individual, other than KEITA, depositing an HRA Supplement Check into the "Alexander Egber" account.

### The "Alseny Keita" Account

15. Based on my review of bank records, including bank surveillance photographs, I have learned that, between on or about January 9, 2019, and on or about July 26, 2019, approximately eight HRA Supplement Checks totaling approximately $5,051.97 were deposited into a bank account belonging to "Alseny Keita" at a national bank whose accounts are insured by the Federal Deposit Insurance Corporation ("Bank-3"). The payees on the checks were not ALSENY KEITA or SEKHOU TOURE, the defendants.

16. Based on my review of bank records and law enforcement databases, the date of birth listed in the "Alseny Keita" account opening documents matches the date of birth of ALSENY KEITA, the defendant, contained in law enforcement databases.

* * *

17. All of the deposits or withdrawals specifically identified in this Sealed Complaint were made at ATMs. Based on my training and experience, I know that an individual engaged in fraudulent activity is more likely to use ATMs to deposit checks or make withdrawals than to use human tellers. The reason is that an individual engaged in fraudulent activity will not be prompted to show identification if he or she uses an ATM, which could happen if he or she transacted with human tellers.

18. Since in or about 2015, more than 3,000 HRA Supplement Checks have been deposited in the manner described above into more than 50 different accounts. Seventy-six HRA Supplement Checks were deposited into the "Sekhou Toure" account at Bank-1 and twenty HRA Supplement Checks were deposited into the "Sekhou Toure" account at Bank-2. Likewise, 169 HRA supplement checks were deposited into the "Okoli Soumah" account, 158 HRA supplement checks were deposited into the "Alexander Egber" account, and eight HRA Supplement Checks were deposited into the "Alseny Keita" account. Together, the 431 checks were addressed to more than 350 different payees. Based on my training and experience, I believe it is unlikely that the many payees on these checks authorized ALSENY KEITA and SEKHOU TOURE, the defendants, to deposit those checks and withdraw money based on those deposits. Furthermore, based on my training

7

and experience, the fact that KEITA used names and identities other than his own suggests that he was trying to conceal his fraudulent activity.

19. When the HRA Supplement Checks were deposited, the account holder was typically permitted to withdraw a certain amount of cash based on the purportedly valid deposit. In some instances, the deposited check was rejected by the bank as potentially fraudulent or otherwise defective. In these instances, the account holder was liable for the value of the cash dispensed by the bank. If the account holder declined to pay or was unable to pay, the bank was liable for the value of the cash that it dispensed.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of ALSENY KEITA and SEKHOU TOURE, the defendants, and that they be arrested, and imprisoned or bailed, as the case may be.

_____
SPECIAL INVESTIGATOR WAI YU
New York City Department
of Investigation

Sworn to before me this
13th day of September, 2019

_____
THE HONORABLE JAMES L. COTT
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

8